HENRY VON MAUR AND SUSAN VON MAUR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Von Maur v. Commissioner
Docket No. 12077-81.
United States Tax Court
T.C. Memo 1986-175; 1986 Tax Ct. Memo LEXIS 430; 51 T.C.M. (CCH) 953; T.C.M. (RIA) 86175; April 29, 1986. Henry Von Maur, for the petitioners. David D. Baier, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: For the calendar year 1977, respondent determined a deficiency in petitioners' minimum tax under section 56, Internal Revenue Code of 1954, [1] in the amount of $8,784.52. In his petition filed herein, petitioner placed this entire amount in issue, and, in addition, claimed an overpayment of tax of $2,769. At trial, however, petitioner conceded the correctness of respondent's determination with respect to the minimum tax, leaving in issue only the right of petitioners to carry back a claimed short-term capital loss, in the amount of $87,721.88, from the year 1978 to the year 1976, and the claimed right, pursuant to such carryback, to recompute their taxable income for 1977 under the income averaging provisions of sections 1301 through 1305, resulting in a claimed reduction of their tax liability *432 for 1977 in the amount of $2,769. At the time the petition herein was filed, and at all other times relevant hereto, petitioners resided at 1267 Coinsins, Vaud, Switzerland. Their joint individual income tax return for the calendar year 1977, computed on the cash receipts and disbursements basis, was filed with respondent's Internal Revenue Service Center at Philadelphia, Pennsylvania. During the years 1975 through 1978, petitioner Henry Von Maur (hereinafter "Henry") was exclusively engaged in the trading of securities, options and commodities in the open market for his own account. During 1977 and 1978, Henry cleared his transactions through various brokerage firms. During the years 1971 to 1974, Henry was employed as an investment manager for Rainbow Investment, a Swiss company which is chartered to transact securities, options and commodities business. He was paid commissions on the transactions he handled for Rainbow Investment customers. During 1977 and 1978, *433 Henry was president of Rainbow Investment, but received no compensation for this position. He sought to obtain customers, but had none. The joint individual income tax returns filed by petitioners for the years 1977 and 1978 disclosed no income from wages, salaries and other employee compensation, and no income or loss from business. The returns for both years showed income from interest and dividends. The 1977 return showed net reportable capital gains in the amount of $69,472.06, resulting from long-term capital gains in the amount $192,849.38, offset by short-term capital losses in the amount of $53,905.26. For 1978, the joint return showed net short-term capital losses in the amount of $104,966.24 which, after offsetting long-term gains for the year in the amount of $14,244.35, produced a net loss of $90,721.89 for the year, all of which was short-term. After deducting $3,000 of this latter amount against their income for 1978, petitioners were left with a short-term capital loss carryover, as they computed it, in the amount of $87,721.89. In a claim for refund duly filed, petitioners undertook to carry back their net capital loss carryover from 1978 to the year 1976. Having *434 done so, petitioners determined that the resulting reduction of their reported 1976 taxable income, from $138,631 to $54,569, entitled them to recompute their income tax liability for the year 1977 under the income averaging provisions of sections 1301-1305, as then in effect. As a result of this computation, petitioners claimed an overpayment of tax in the amount of $2,769 for 1977, which respondent disallowed in his statutory notice of deficiency herein. What is at issue here is not primarily petitioners' right to recompute their 1977 income, using the income averaging provisions of sections 1301-1305; rather, it is petitioners' right to the claimed carryback from the year 1978 which would give rise to such recomputation. The burden of proof was upon petitioners to show their right to the claimed carryback, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). On this issue, we hold that petitioners' position is without merit, both as a matter of fact and as a matter of law. It was petitioners' position that the claimed carryback from 1978 to 1976 was allowable because in the years 1977 and 1978, Henry was engaged in the business of being a dealer in securities, *435 rather than simply being an investor for his own account. This, at least, appeared to be the thrust of Henry's rather vague and disconnected testimony at trial. The other evidence of record, however, clearly contradicts this assertion. The parties stipulated that in the years 1975 through 1978 Henry was exclusively engaged in the trading of securities and commodities for his own account. The joint returns filed by petitioners for the years 1977 and 1978 are consistent with this, in that all the securities gains and losses for each year were reported by petitioners as short-term or long-term capital gains or losses, as opposed to ordinary gains and losses from the conduct of a business. See section 1221(1). It was further stipulated by the parties that Henry had no customers for whom he did business in either of the years 1977 or 1978. We accordingly hold that petitioners have failed to carry their necessary burden of proof to show that Henry was engaged in the trade or business of dealing in securities in 1977 or 1978, so as to give him any right to a carryback of a net operating loss from such business in 1978, under the provisions of section 172. The net short-term *436 capital loss for 1978, so characterized and reported by petitioners, can only be carried forward to future years under the provisions of section 1212(b). Even if we were to find that Henry was engaged in the trade or business of being a dealer in securities, which we do not, the security losses suffered by petitioners in 1978 were, by their own characterization in the 1978 joint return, capital losses from their own investment portfolio and would therefore be excludable from the computation of any allowable net operating loss which could be carried back to prior years, under the specific provisions of section 172(d)(2). [2]
*437 Finally, even if petitioners could surmount the foregoing hurdles, and could show that they were entitled to the claimed net operating loss carryback from the year 1978, they would be required to carry back any such net operating loss from 1978 to 1975 in the first instance, and could only carry into the year 1976 any remaining net operating loss carryback which was not absorbed against income in the year 1975. Sections 172(b)(1)(A) and (b)(2).The record herein is silent as to the amount of net taxable income, if any, which petitioners had in the year 1975. There is simply no provision of law which would permit petitioners to treat their short-term capital loss for 1978 in the manner in which they attempt to do herein. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Although petitioners' tax return is not self-proving, and neither party is conclusively bound thereby, Halle v. Commissioner,7 T.C. 245 (1946), affd. 175 F.2d 500 (2d Cir. 1949), cert. denied 338 U.S. 949 (1950), the characterization of an item of income therein may, in the proper context, be considered as an admission on the part of the taxpayer.See Fed. R. Evid. 801(d)(2); Estate of McGill v. Commissioner,T.C. Memo. 1984-292; Steffens v. Commissioner,T.C. Memo. 1981-637↩ n. 13.